JUDGE PATTERSON

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

YEN CHING PENG,
    a/k/a "Yen-Po Peng,"
    a/k/a "Alex Peng," and
PETER LIU,
    a/k/a "Kang Tai Liu"

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**07 CRIM 1214**

**INDICTMENT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 20 2007

**COUNT ONE**
(Conspiracy)

The Grand Jury charges:

Background

1.     At all times relevant to this Indictment, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," the defendant, resided in Taiwan and worked for a company engaged in the business of reverse-engineering technology, including military technology.

2.     At all times relevant to this Indictment, PETER LIU, a/k/a "Kang Tai Liu," the defendant, resided in the United States and worked as a flight attendant, often on flights to Asia and Europe.

3.     By statute, the President of the United States is authorized to control the import and export of military items and technology, and as part of that authorization, is

1

authorized to designate those items that are "defense articles" and "defense services," which items are subject to import and export restrictions. Such items designated by the President constitute the United States Munitions List ("Munitions List"). Among other things, exporters of Munitions List items must obtain licenses and submit registrations under Title 22, United States Code, Section 2778 and the regulations promulgated under that statute. The Munitions List is maintained and administered by the United States Department of State, Directorate of Defense Trade Controls.

4. Variable Intensity Tactical Aiming Lasers, Version 2 ("VITAL-2s"), ATILLA Tactical Aiming Lasers, and AN/PEQ-2As are weapons-mounted infrared laser aiming devices. They are primarily manufactured under contract with the United States Department of Defense ("DoD") for military use in conjunction with night-vision equipment. Some are also sold to law enforcement agencies. These devices project on a target an infrared laser beam that cannot be seen with the naked eye, but can be seen with night vision equipment.

5. JHMCS, or Joint Helmet Mounted Cueing System, is a fighter pilot's helmet and associated technology manufactured, primarily under contract with DoD, solely for military use. Among other things, JHMCS permits a fighter pilot to accurately direct (cue) onboard weapons against enemy targets while performing high-gravity aircraft maneuvers.

6. AN/PAS-13B Heavy is a thermal weapon sight manufactured primarily under contract with DoD for military use. This device facilitates target acquisition and

surveillance in low-light conditions by detecting and visually displaying heat sources.

<u>The Scheme</u>

7. From at least in or about July 2006 through on or about December 11, 2007, in the Southern District of New York and elsewhere, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, and others known and unknown to the Grand Jury, engaged in a scheme illegally to export United States military technology designated and subject to export controls by the President of the United States through the United States Munitions List. Among the items the defendants sought to purchase and export from the United States to Taiwan were Variable Intensity Tactical Aiming Lasers, Version 2, AN/PEQ-2A weapons-mounted infrared laser aiming devices, ATILLA Tactical Aiming Lasers, a JHMCS fighter pilot helmet and its associated technology, and an AN/PAS-13B Heavy thermal weapon sight.

8. In furtherance of their Munitions List items export scheme, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, and others known and unknown to the Grand Jury, executed wire transfers from locations outside the United States into the United States to pay for the Munitions List items.

9. In furtherance of their Munitions List items export scheme, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, and others known and unknown to the Grand Jury, concealed and

misrepresented the military nature and value of the items they exported and caused to be exported, by, among other things, making and causing to be made false statements to the United States Customs Service and the United States Postal Service regarding the contents of packages exported from the United States to Taiwan.

## Statutory Allegations

10.  From at least in or about July 2006 through on or about December 11, 2007, in the Southern District of New York and elsewhere, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, wilfully, and knowingly, did combine, conspire, confederate, and agree together to defraud the United States and agencies thereof, to wit, United States Customs and Border Protection and the United States Postal Service, and to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 1956, 641, 554; Title 22, United States Code, Section 2778; Title 39, Code of Federal Regulations, Part 20; and Title 22, Code of Federal Regulations, Sections 120.6, 120.20, 121.1, 123.1, 127.1.

## Objects of the Conspiracy

11.  It was a part and an object of the conspiracy that YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly would and did export and attempt to export defense articles designated by the President of the United States on the United States Munitions List, to

wit, Variable Intensity Tactical Aiming Lasers, Version 2, AN/PEQ-2A weapons-mounted infrared laser aiming devices, ATILLA Tactical Aiming Lasers, a JHMCS fighter pilot helmet and its associated technology, and an AN/PAS-13B Heavy thermal weapon sight, without a license for such export from the United States State Department, Directorate of Defense Trade Controls, in violation of Title 22, United States Code, Sections 2778(a)(1), (b)(2), (c); and Title 22, Code of Federal Regulations, Sections 120.6, 120.20, 121.1 (Category XII), 123.1, 127.1.

12.     It was a further part and an object of the conspiracy that YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer a monetary instrument and funds to and through a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, export smuggling and export control violations involving an item controlled on the United States Munitions List, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

13.     It was a further part and an object of the conspiracy that YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, knowingly, and fraudulently would and did export and send, and attempt to export and send, from the United States merchandise, articles, and objects contrary to a

law and regulation of the United States by misrepresenting on customs declaration forms accompanying shipments the contents and dollar value of the shipments, in violation of Title 18, United States Code, Section 554; 39 C.F.R. Part 20, International Mail Manual Section 123.

14. It was a further part and an object of the conspiracy that YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully and knowingly would and did receive, conceal and retain a thing of value of the United States and of a department thereof, and property made under contract for the United States and a department thereof, believing, after and as a result of an official representation as to the nature of the property, such property to have been embezzled, stolen, purloined and converted, in violation of Title 18, United States Code, Section 641.

15. It was a further part and an object of the conspiracy that YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly would and did defraud the United States and the Customs Service and Postal Service by impeding, impairing, defeating and obstructing the lawful governmental functions of the Customs Service and the Postal Service in the enforcement of export laws and postal regulations.

Overt Acts

16. The following overt acts, among others, were committed and caused to be

committed, in the Southern District of New York and elsewhere, by YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," and PETER LIU, a/k/a "Kang Tai Liu," the defendants, and their co-conspirators in furtherance of the conspiracy and to effect its objects:

    a.    On or about July 17, 2006, PENG sent an email to an undercover email account (the "UC Account") in the Southern District of New York requesting "special toys."

    b.    On or about July 19, 2006, PENG sent an email to the UC Account requesting various Munitions List items, including AN/PEQ-2A infrared laser aiming devices, NVEC ATILLA infrared laser aiming devices, and "PAS-13 HTWS" thermal weapon sights.

    c.    On or about August 14, 2006, PENG sent an email to the UC Account stating that PENG has "sold 4 VITAL-2" infrared laser aiming devices, and requesting JHMCS fighter pilot's helmets.

    d.    On or about September 25, 2006, PENG sent an email to the UC Account requesting "the JHMCS Helmet, Mask, and Cables (Complete pilot set)."

    e.    On or about October 2, 2006, PENG sent an email to the UC Account asking: "Do you have other special toys (Current Issued Equipments)? . . . Current Issued Rifle Parts, Scope, Sights, IR sight, Thermal Weapon."

    f.    On or about October 12, 2006, PENG sent an email to the UC Account agreeing to pay an additional $100 fee to the undercover to compensate the undercover

for the risk of exporting military items without a license, and requesting that the undercover "write 'Gift, Toys for Child, $36.95' on the Customs Forms/Invoice of the package" containing a $1,720 VITAL-2 infrared laser aiming device.

  g. On or about October 14, 2006, PENG sent approximately $1,820 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

  h. On or about February 16, 2007, PENG sent an email to the UC Account agreeing to purchase two AN/PEQ-2As.

  i. On or about February 21, 2007, PENG, in a telephone call with an undercover agent located in the Southern District of New York, agreed to pay an additional $100 fee per unit to the undercover agent to compensate the undercover agent for the risk of exporting military items without a license, and requested that the undercover write "plastic toy parts" or "toy parts" with a value of approximately $19.95 per item on Customs forms accompanying a package containing two $1,500 AN/PEQ-2A infrared laser aiming devices.

  j. On or about March 1, 2007, PENG sent approximately $3,200 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

  k. On or about March 29, 2007, PENG sent an email to the UC Account reporting that ITT had been fined $100 million for illegal exports and attaching a link to a news article regarding ITT's guilty plea relating to illegal exports of night vision

technology.

l.  On or about October 1, 2007, PENG sent an email to the UC Account requesting that a PAS-13 Heavy Thermal Weapon Sight be disassembled and shipped in three packages, and suggesting that the contents of the packages be described on Customs Forms as a battery recharger, a camera lens, and scope parts.

m.  On or about October 11, 2007, PENG sent approximately $4,500 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

n.  On or about October 28, 2007, PENG sent an email to the UC Account requesting that the JHMCS fighter pilot's helmet be shipped to LIU.

o.  On or about October 28, 2007, PENG sent approximately $6,750 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

p.  On or about November 2, 2007, PENG, in a telephone call with an undercover agent located in the Southern District of New York, stated that PENG had bought many things from LIU and PENG suggested that the undercover agent provide to LIU three AN/PEQ-2A infrared laser aiming devices paid for by PENG.

q.  On or about December 2, 2007, PENG sent approximately $6,850 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

r.  On or about December 4, 2007, LIU, in a telephone call with an undercover

9

agent in the Southern District of New York, arranged a meeting for delivery of a JHMCS fighter pilot's helmet.

  s. On or about December 5, 2007, PENG, in a telephone call with an undercover agent in the Southern District of New York, instructed the undercover agent falsely to state on Customs Forms accompanying a package containing VITAL-2 and ATILLA laser aiming devices that the package contained "a battery case," "battery box," or "toy parts." In addition, during this call PENG instructed the undercover agent falsely to declare the value of the contents of the package to be $39 or $26.

  t. On or about December 6, 2007, LIU met in New York, New York with an undercover agent to take possession of a JHMCS fighter pilot's helmet.

  u. On or about December 6, 2007, PENG sent approximately $4,500 by wire transfer to an undercover bank account in New York from a bank account located outside the United States.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FIVE

(Unlicensed Export of Munitions List Items)

  The Grand Jury further charges:

  17. Paragraphs 1 through 9 and 16 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

  18. From in or about July 2006 through the approximate shipment dates set forth below, in the Southern District of New York and elsewhere, the defendant listed

below unlawfully, wilfully, and knowingly caused, aided, abetted, counseled, demanded, induced, procured, and permitted the commission of an act prohibited by Title 22, United States Code, Section 2778 and regulations issued thereunder, to wit, the export and attempted export of defense articles designated by the President of the United States on the United States Munitions List without a license for such export from the United States State Department, Directorate of Defense Trade Controls, namely, the defendant caused, aided, abetted, counseled, demanded, induced, procured, and permitted the export without a license from Manhattan, New York to Taiwan of the Munitions List items set forth below.

| Count | Defendant | Approx. Shipment Date | Munitions List Items |
|---|---|---|---|
| Two | PENG | October 17, 2007 | One VITAL-2 infrared laser aiming device |
| Three | PENG | March 7, 2007 | Two AN/PEQ-2A infrared laser aiming devices |
| Four | PENG | December 5, 2007 | One VITAL-2 and One ATILLA infrared laser aiming device |
| Five | PENG LIU | November 2007 | Three AN/PEQ-2A infrared laser aiming devices |

(Title 22, United States Code, Sections 2778(a)(1), (b)(2), (c); Title 22,
Code of Federal Regulations, Sections 120.6, 120.20, 121.1 (Category XII),
123.1, 127.1; Title 18, United States Code, Section 2.)

11

## COUNTS SIX THROUGH ELEVEN
(Money Laundering)

The Grand Jury further charges:

19.     Paragraphs 1 through 9 and 16 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.     On or about the dates set forth below, in the Southern District of New York and elsewhere, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," the defendant, unlawfully, wilfully, and knowingly did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds to and through a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, (a) smuggling goods from the United States, in violation of Title 18, United States Code, Section 554, and (b) illegally exporting defense articles controlled on the United States Munitions List, in violation of Title 22, United States Code, Section 2778 and regulations issued thereunder:

| Count | Approx. Date | Approx. Amount of Funds |
|---|---|---|
| Six | October 14, 2006 | $1,820 |
| Seven | March 1, 2007 | $3,200 |
| Eight | October 11, 2007 | $4,500 |
| Nine | October 28, 2007 | $6,750 |
| Ten | December 2, 2007 | $6,850 |
| Eleven | December 6, 2007 | $4,500 |

(Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNTS TWELVE THROUGH FOURTEEN
(Export Smuggling)

The Grand Jury further charges:

21.     Paragraphs 1 through 9 and 16 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

22.     On or about the dates set forth below, in the Southern District of New York and elsewhere, YEN CHING PENG, a/k/a "Yen-Po Peng," a/k/a "Alex Peng," the defendant, unlawfully, wilfully, knowingly, and fraudulently did export and send from the United States and did cause the export and sending from the United States of merchandise, articles, and objects contrary to laws and regulations of the United States, to wit, PENG caused the customs declaration forms accompanying shipments of the infrared laser aiming devices specified below to falsely misrepresent the contents and dollar value of the shipments as set forth below.

| Count | Date | True Items Shipped | False Description of Items Shipped | Approx. True Price of Items Shipped | Approx. False Price Claimed |
|---|---|---|---|---|---|
| Twelve | Oct. 17, 2006 | One VITAL-2 infrared laser aiming device | Gift, Toys for Child | $1,720 | $36.95 |
| Thirteen | March 7, 2007 | Two AN/PEQ-2A infrared laser aiming devices | toy parts | $3,000 | $39.90 |

13

| Fourteen | Dec. 5, 2007 | One VITAL-2 and one ATILLA infrared laser aiming devices | toy parts | $3,400 | $39 |

(Title 18, United States Code, Sections 554 and 2; 39 C.F.R. Part 20, International Mail Manual Section 123.)

### COUNT FIFTEEN
(Receipt of Stolen Government Property)

The Grand Jury further charges:

23.     Paragraphs 1 through 9 and 16 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

24.     On or about December 6, 2007, in the Southern District of New York and elsewhere, PETER LIU, a/k/a "Kang Tai Liu," the defendant, unlawfully, wilfully, and knowingly received, concealed and retained a thing of value of the United States and of a department thereof, and property made under contract for the United States and a department thereof, believing, after and as a result of an official representation as to the nature of the property, such property to have been embezzled, stolen, purloined and converted, the value of which property exceeded $1000, to wit, PETER LIU, a/k/a "Kang

14

Tai Liu," the defendant, took possession of a JHMCS fighter pilot's helmet, which had been represented to him to have been stolen.

(Title 18, United States Code, Sections 641, 21, and 2.)

_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

YEN CHING PENG,
    a/k/a "Yen-Po Peng,"
    a/k/a "Alex Peng," and
PETER LIU,
    a/k/a "Kang Tai Liu"

          Defendants.

### INDICTMENT

07 Cr.

18 U.S.C. 371; 22 U.S.C. 2778; 18 U.S.C. 1956(a)(2)(A); 18 U.S.C. 554; 18 U.S.C. 641; 18 U.S.C. 2.

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

_____ Foreperson.